Dewet, J.
Both parties derive title through Caleb Burbank, the demandant under a levy of execution, July 20th 1841; and the tenant by deed, dated January 18th 1834, and sundry conveyances by grantees holding under that deed. The tenant’s title, being prior in point of time, must of course prevail, if it shall be found to have included the demanded premises. The inquiry therefore arises, what was embraced in the deed of January 18th 1834, made by Caleb Burbank to Amasa Wood, John Jacobs and Abraham G. Randall ? It describes the premises conveyed, in the following words: “ The farm whereon I now live, situate in said Millbury, in Burbankville, so called, on the road leading from Grafton to Sutton, containing about 70 acres, which said estate is now under a mortgage to Stephen Salisbury.” It appears from the facts, that independently of the questions arising from certain objections which will presently be considered, the location of the demanded premises, and the occupation thereof by Caleb Burbank, at the time of his conveyance, were such as would well entitle the same to be included in the description, the farm whereon he lived. It was a parcel of a larger tract of land, occupied by the grantor, adjoining lands admitted to be his home farm, and in fact lying in comr mon with a portion of such lands. The objection to including this land in the above description arises from other grounds, which I will proceed to consider.
The demandant contends that the home farm of Burbank, the grantor, had a well known locality, being certain land purchased by him in the year 1788; and that it was so understood and declared by the deed which he made to Stephen Salisbury in 1829, wherein, after the description of the premises to be conveyed, as his “ home farm,” he proceeded to set out the premises by metes and bounds, and by this description excluded the premises demanded in the present action. This conveyance has, undoubtedly, some tendency to show what the grantor of the present deed understood to be embraced in the description *533 “ home farm.” Still, if the general description, the farm tvhereoji the grantor lives, would, if unrestricted by any subsequent limitation in the deed, pass all the lands lying adjacent to, and occupied with the homestead, the fact that the grantor had, on a former occasion, used this form of description in a restricted and limited manner, and by express words indicated such limitation, by a description by metes and bounds, in such former deed, would not necessarily restrict these words, when used in the present deed, without those words of limitation which existed in such former conveyance. Nor does the description of the quantity of land, though corresponding in the number of acres with the quantity stated in a former conevyance made by him, and especially when accompanied with the qualifying words “ more or less,” or “ about ” so many acres, furnish very strong evidence of the purpose of the grantor to restrict the limits of the premises to those which were conveyed in such former deed. The quantity of land stated in a deed may be considered, in a case of doubtful and uncertain boundary upon the face of the deed, and may be used as a circumstance in weighing the evidence bearing upon the question of such boundary. But it has no effect, when the language of the conveyance is clear and obvious as to the description of boundaries ; nor will it control monuments, or courses and distances.
But the great and leading objection to the tenant’s construction of the deed, under which he claims, is, that the general description, “ the farm whereon I live,” is qualified and restricted by the subsequent words, “ which said estate is now under mortgage to Stephen Salisbury.” These words, it is said, are a part of the description of the premises; and giving them full and controlling effect as such, it is admitted that the land demanded in this action would not be included in the premises conveyed to Amasa Wood and others.
The question then arises, are these words introduced as a part of the description of the land, and for the purpose of defining its boundaries ? and can they properly have the effect of controlling and limiting the preceding description, “ the farm wherecn I live ” ?
*534 It is to be remarked, that it is nowhere said in this conveyance, that reference is to be had to the mortgage deed of the grantor to Salisbury for a more particular description of the premises conveyed. There is, in truth, nothing declaring such purpose, or indicating directly that the grantor intended to refer to such deed for any purpose connected with boundaries. If such was the purpose, it is only to be raised by implication, and from the connection of the clause with the part of the deed in which the conveyed premises are described. It might well have been introduced for another and entirely different purpose, viz. the presenting, on the face of the conveyance, the fact that the estate conveyed was incumbered with a mortgage to Salisbury. This was truly stated; and though the mortgage deed did not cover the whole land of the 'grantor, which is now supposed to be a part of the farm on which the grantor lived; yet it was an incumbrance upon the estate conveyed, and would as effectually reduce the value of the whole land thus conveyed as the home farm, as though it were a lien upon the entire farm.
The manner in which this recital of the estate being under a mortgage to Salisbury is introduced into the deed, and its possible, if not probable reference to another object than the limitation of the boundaries, necessarily much weakens its force and effect, when relied on as controlling a description of the premises precedent to it, and which description, in itself, speaks a plain and unequivocal language.
The cases which have presented questions of discrepancy between two different descriptions of the premises, and where the court have been called upon to decide which is to be the governing one, have usually been cases in which there has been a direct reference to the second description, for a more particular description of the premises conveyed. Such questions have been of great difficulty and embarrassment; and rules somewhat conflicting have prevailed in different courts. This subject has recently been most fully and deliberately considered by us, in the case of Melvin v. Proprietors of Locks & Canals, decided at Middlesex, October 1842, (5 Met. 15,) in which case we had occasion to review all the authorities bearing upon the *535 subjei t. That case was a conveyance of “ the estate on which C. lives, being the same which was conveyed by M. to K.” by a certain mortgage deed referred to. The mortgage did not embrace all the estate occupied by C.; but the court held that the precedent description, being a plain and obvious one, and certain in its character, was not to be restricted by the reference to the mortgage; that when the grantor says he conveys all his home farm, he is to be taken to speak the true purposes of his conveyance.
Now it is quite obvious, that the purchaser would much more readily rely upon this general description, and would have his attention drawn to it, rather than to the reference to the deed given by some former owner to the grantor. If the precedent description be full and explicit, and capable of being easily applied to the land, it ought to prevail, unless the subsequent reference was most manifestly intended and understood by the parties as a restriction or limitation. I do not propose, however, to go into the question of the correctness of that decision, or to present the course of argument or authority by which it may be sustained ; as that has been done by my brother Wilde, in that case.
The same point had previously arisen in the case of Thatcher v. Howland, 2 Met. 41, where David Thatcher had conveyed to Samuel Eliot “ all his real property, or homestead, so called, consisting of a dwelling-house and thirty acres of land; for more particular boundaries reference being had to a deed, given by Clark Ricketson to David Thatcher, of the abovementioned premises.” But the land conveyed by Ricketson to Thatcher had been in part conveyed, and in lieu thereof other lands purchased; so that if effect were given to the description by reference to Ricketson’s deed, the entire homestead would not be conveyed. The court, however, held that the reference was inadvertently introduced, and might be rejected. This was in the year 1840. In 1822, in the case of Eliot v. Thatcher, reported in the note to the case of Thatcher v. Howland, it seems that a similar construction was given and a similar decision made upon the same question. Upon the examination of the case of Melvin v. Proprietors of Locks & Canals, before referred to, many other cases were found to sustain the same *536 principle; and the court were satisfied that the weight of authority, as well as sound principle, would sustain us in rejecting the reference to the mortgage, as inadvertently introduced, and not designed to exclude from the conveyance any of the land embraced in the description of the estate on which C. lived.
We are aware that the cases from the New Hampshire Re ports are at variance with this doctrine. Those cases were also before us in the case of Melvin v. Proprietors of Locks & Canals, and were then considered.
Now the cases to which I have referred, of our own decision», were much stronger than this for the application of a restriction by reason of the subsequent description, as they were cases of express reference; but this did not avail. If those cases are sound law, there can be no question but that we must give full force and effect to the first description in the present deed, and hold the same not. to be restricted by the recital as to the Salisbury deed. We see no reason for questioning those decisions, and they seem to be decisive.
There are other facts, indicated by the conveyance in the present case, which strengthen the views we have taken of this deed, as carrying out the purposes of the parties to that deed. It was, apparently, a general assignment of the grantor’s property ; a conveyance by one in debt, and who wished, by such assignment, to avoid liability to attachment by particular creditors. This object would not be accomplished if he omitted the land now in controversy. To have designedly omitted this land would almost have subjected the grantor to the imputation of a fraud upon his creditors; because doubts are expressed whether the whole land conveyed was adequate to the payment of the debts. These circumstances lead us to suppose that the grantor really intended to convey all the farm on which he lived; and as he used proper words descriptive of the entire premises thus held by him as his home farm, we are of opinion that there is nothing in the reference to the mortgage to Salisbury, that should defeat the purpose of the parties, or restrict the conveyed premises to any narrower limits than the lands embraced in the description of the farm o'l which the grantor lived

Demandant nonsuit.